IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BRUCE McLAUGHLIN and NANCY HALL,<br><br>　　　　Defendants. | **ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION**<br><br>Case No.  2:04-CR-100 DB<br><br>Judge Dee Benson |

**INTRODUCTION**

Before the Court is the government's objection to the Report and Recommendation of Magistrate Judge Brooke Wells issued on June 15, 2005.   The government filed its objection on June 28, 2005, and Defendants filed a memorandum in support of the magistrate judge's Report and Recommendation on July 13, 2005.

In her report, the magistrate judge recommends granting Defendants' motion to suppress evidence seized at the traffic stop of a vehicle driven by Defendant Nancy Hall on Interstate 70 near Elsinore, Utah.  The magistrate judge's recommendation is based on three major determinations; first, that the initial stop of the vehicle was not legally justified; second, even if the stop was legal, that there was insufficient reasonable suspicion to support further detention of Defendants once the purpose of the initial stop was satisfied; and third, that the canine alert indicating drugs in the vehicle was incompetent to support probable cause to search.  The Court **ADOPTS** the magistrate's Report and Recommendation as to the first and second of these determinations and overrules the government's objection to the same.  However, the Court does

not adopt the magistrate's Report and Recommendation regarding the validity of the canine search, and sustains the government's objection of that issue. The Court finds the canine alert was sufficient to support probable cause for the search that followed.

ANALYSIS

A.  **Legality of the Traffic Stop**

With respect to the first issue, the Court agrees with the magistrate judge that the government failed to prove by a preponderance of the evidence that the officer observed evidence of a possible traffic violation to justify a stop. The government argues only two justifications for the stop: 1) that the Defendants' vehicle was traveling well below the posted speed limit, and 2) that the vehicle was driven outside its lane of travel for approximately one quarter-mile. As articulated at length in the Report and Recommendation, neither of these justifications have merit, and the Court adopts in toto the explanations and legal analysis contained therein.[1]

B.  **Reasonable Suspicion**

Turning to the second issue, the detention of the vehicle and its occupants after the initial traffic stop has not been supported by a showing of sufficient reasonable suspicion of criminal

---

[1] By way of comment only, the Court notes that it appears from the facts that the officer may have been justified to make the stop for the purpose of determining whether the driver was sleepy or otherwise impaired. The Court takes judicial notice that the section of Interstate 70 in question is roughly in the middle of nowhere, and an apparently fully-functioning automobile traveling at only 56 miles per hour – a full 19 miles below the maximum legal speed – at 8:30 p.m. on a February night is by itself reason to cause suspicion that something may be amiss with the operator. The officer said as much in his testimony. Tr. at 17. In the Court's view, this safety concern (both for the driver herself and other motorists) may have been enough to warrant a brief stop to make sure the driver was not impaired.
However, the government has not raised this point in the briefing or at oral argument as a support for the stop. As a result, the issue has not been explored or addressed by Defendants, and it would be inappropriate for the Court to sua sponte rely on that basis to support the stop.

activity to justify the detention.  On this issue, the government bears the burden of proof.  *United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998).  The government must persuade the Court by a preponderance of the evidence that the evidence facing the officer was objectively sufficient to support reasonable suspicion that criminal activity was afoot.  *See United States v. Quintana-Garcia*, 343 F.3d 1266, 1270 (10th Cir. 2003) (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)).  Here, all we have is a car traveling slowly, a nervous driver, a car that didn't belong to the driver or the passenger, a heavy smell of air freshener, a delay in pulling the car over to the side of the road, and a refusal by the driver to allow the officer to search the car.  Viewing these factors separately and as a whole, they are insufficient to meet the government's burden.  Even if they were sufficient to permit some detention beyond the reason for the initial stop, they were not sufficient to justify a 20 minute detention during which both the driver and the passenger were subjected to considerable questioning and impairment tests.  It appears from the record the main reason for the delay was to get a drug-sniffing dog to the scene.  But, under abundant precedent, an officer cannot reasonably detain motorists on the side of an interstate for the better part of half an hour based only on slow speed, nervousness[2], a third party owner, and air freshener.  *See United States v. Lopez-Martinez*, 25 F.3d 1481, 1486 (10th Cir. 1994) (maintaining a noticeably slow speed in the presence of a police officer is akin to nervous behavior); *United States v. Abdon-Limas*, 780 F.Supp. 773, 780 (D. N.M. 1991) (Court could not conclude that driver who reduces his vehicle's speed at the sight of border patrol officials and occupants who refuse to look at the officials, even if unusual,

---

[2] If the nervousness were extraordinary, that is, considerably more than the evidence shows in this matter, the result may be different.  *See United States v. Williams*, 271 F.3d 1262 (10th Cir. 2001); *United States v. West*, 219 F.3d 1171 (10th Cir. 2000).

creates a suspicion of criminal conduct that is reasonable); *State v. Carpena*, 714 P.2d 674, 675 (Utah 1986) (vehicle with out-of-state license plates traveling at a slow rate of speed late at night does not of itself create reasonable suspicion of criminal activity); *United States v. Wald*, 216 F.3d 1222, 1227-28 (10th Cir. 2000) (nervousness is of limited significance in determining probable cause to search because "[i]t is not uncommon for most citizens – whether innocent or guilty – to exhibit signs of nervousness when confronted by a law enforcement officer."); *United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997) (nervousness is of limited significance in determining reasonable suspicion, and government's reliance of nervousness as a basis for reasonable suspicion must be treated with caution); *United States v. Alvarez*, 68 F.3d 1242, 1245-46 (10th Cir. 1995) ("Standing alone, air freshener is not sufficient to justify a reasonable search for drugs."  Only when coupled with other indicia of criminal activity will the presence of air fresheners properly support a finding of reasonable suspicion); *State v. Hechtle*, 2004 UT App. 96, 89 P.3d 185, 190-91 (presence of multiple air fresheners and other masking agents, as well as condition of defendant's eyes, do not alone create probable cause).

Because both the initial stop and the subsequent detention were unreasonable, they constituted violations of Defendants' Fourth Amendment right to be free from unreasonable searches and seizures, and the evidence that was seized as a result of these actions must be suppressed.  *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) ("When a search violates the Fourth Amendment, the exclusionary rule normally dictates that evidence obtained as a result of that search be suppressed.").  The validity of the canine search that followed is therefore irrelevant as a matter of law, but if it were determined that the earlier police conduct was reasonable, the Court believes the alert by the trained drug dog, Vader, was sufficient to

support a search of the car based on probable cause.

**C.     Probable Cause Based on Canine Alert**

Probable cause means that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  In the Tenth Circuit, an indication by a trained and certified narcotics dog that drugs are present "is itself sufficient to create probable cause." *United States v. Souza*, 223 F.3d 1197, 1206 (10th Cir. 2000).  Although there may be circumstances that would bring the reliability of a specific narcotics dog or a specific dog search into question, those appear to be limited and rare.  The Tenth Circuit has suggested that "with a canine, the reliability should come from the fact that the dog is trained and annually certified to perform a physical skill.  When the annual certification process involves actual field testing and grading of the canine's drug-detection skills . . . the canine's reliability is sufficient for a probable cause determination absent some circumstance that justifies a more complete examination of the canine's skill and performance." *United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997) (quoting *United States v. Wood*, 915 F.Supp. 1126, 1136 n.2 (D. Kan. 1996), *rev'd on other grounds*, 106 F.3d 942 (10th Cir. 1997)).  Those justifying circumstances may include "that the dog's training or certification was substandard, that the health of the dog was such as to possibly affect reliability, and that the circumstances of the particular search raise issues regarding the dog's reliability." *Wood*, 915 F.Supp. at 1136.  None of these justifying circumstances is present in this case.

Based on the magistrate judge's Report and Recommendation, Defendants' expert, Bobby Mutter ("Mutter"), testified at length regarding the general procedures for training and certifying drug-sniffing dogs.  However, Mutter never questioned the certification of Vader nor the

5

procedures used in Vader's training and never once suggested that Vader was unqualified to perform drug searches. Therefore, being unopposed, Vader's qualifications and certification are sufficient to provide reliability to the search.

      The only real argument Mutter makes to support his suggestion that Vader's search was unreliable is the extensive involvement of the handler during the search. In essence, Mutter claims that the handler basically used his hunch that drugs were present to induce the dog to alert. While the Court agrees that using a dog search as a sham in findings drug – essentially not allowing the dog to employ the skill for which he was trained – would significantly decrease the reliability of the search, there is nothing in the record to suggest that Vader's search was only a ruse. In order for a dog search to lose reliability, the conduct of the handler must have an improper effect on the dog. Even if the handler is incompetent, the search can provide probable cause if the dog is still able to use his expertise. The experts in this case disagree on the reliability of the search because of the conduct of the handler: Mutter claims that the search was poorly done because of how suggestive the handler was in soliciting a response; contrarily, the government's expert, Wendell Nope, after reviewing the video tape of the search, stated that the handler did not induce the dog to indicate because he used the same behavior all around the vehicle. It seems reasonable to assume that if the handler's allegedly overly-suggestive conduct affected Vader in this instance, Vader would have made false alerts at other locations before alerting to the actual location of the drugs. If that were the case, the search would resemble a fishing expedition and may not properly support probable cause. However, there is no evidence that Vader alerted anywhere but the passenger side door, where the drugs were found. Therefore, regardless of the suggestive nature of the handler's techniques, they seem to have had little if any

effect on Vader and his ability to locate drugs.  The Court concludes that the circumstances surrounding the instant search were not sufficient to bring into question Vader's reliability.

Additionally, although the Tenth Circuit has indicated that "[a] dog alert might not give probable cause if the particular dog had a poor accuracy record," *United States v. Ludwig*, 10 F.3d 1523 at 1528 (10th Cir. 1994), "a 70-80% success rate meets the liberal standard for probable cause established in *Gates*." *Kennedy*, 131 F.3d at 1378.  Based on the evidence before the magistrate judge, Vader's success rate was approximately 82%, having correctly alerted 31 out of 38 times.  While Vader may not be headed to any world championships for detecting drug odors, the facts are undisputed that Vader was fully trained and had a history of correctly alerting to drug odors.

Moreover, it is undisputed that Vader correctly alerted in the present case.  Regardless of how well Vader had performed in the past, there is no question that he performed well in this instance; any past failures cannot weaken Vader's present accuracy.  *See United States v. Gonzalez-Acosta*, 989 F.2d 384, 389 (10th Cir. 1993) ("had the dog's records indicated it had false-alerted in the past, defendant's ability to cross-examine would not have been enhanced because there is no doubt it correctly alerted in this instance.").  To say that Vader's certification and qualifications along with the circumstances and results of the present search are insufficient to establish probable cause is untenable.  Indeed, the Court cannot understand how "the instant search does not help Vader's reliability as a search dog." *Report and Recommendation* at 40.

## CONCLUSION

Based on the government's arguments that Defendants' vehicle was traveling below the speed limit and crossed over the fog line for a quarter-mile, there was not a legal justification for

pulling over Defendants' vehicle.  Regardless of the validity of the stop, the arresting officers did not possess reasonable suspicion to detain Defendants beyond the purpose of the initial stop.  Therefore, any detention beyond the traffic warning was a violation of Defendants' Fourth Amendment right to be free from unreasonable searches and seizures.  Accordingly, the Court **ADOPTS** the magistrate judge's Report and Recommendation as to those issues, including the findings of fact and the legal analysis supporting those two findings.  As a result, the Court hereby **GRANTS** Defendants' motion to suppress evidence seized as a result of the subsequent search.

As to the magistrate judge's third determination – that the canine search in this instance was unreliable and therefore did not provide the officers with probable cause to search Defendants' vehicle – the Court **REJECTS** the findings and analysis of the Report and Recommendation.  Because Vader was trained and certified to detect drugs, and because the circumstances surrounding the search did not impede Vader from employing his expertise, the Court finds that his alert indicating the presence of drugs was reliable and sufficient to provide the officers with probable cause.

**IT IS SO ORDERED.**

DATED this 22nd day of August, 2005.

_/s/ Dee Benson_

Dee Benson
United States District Judge